UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **Robin Melville,** | \* | |
| **individually and on behalf of the** | \* | |
| **Succession of Michael Steven Melville,** | \* | **Civil Action** |
| | \* | |
| **Plaintiff** | \* | |
| | \* | **No.** |
| **v.** | \* | |
| | \* | **Judge:** |
| **Helmerich & Payne, Inc.,** | \* | |
| | \* | **Magistrate:** |
| **Defendant** | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

### Nature of Action

1. This is an action for equitable relief, along with attorney's fees and costs, under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*, specifically ERISA §§ 502(a)(3) and (g), 29 U.S.C. §§ 1132(a) and (g).

### Jurisdiction, Venue & Service

2. This Court has jurisdiction over plaintiff's federal question claims under 28 U.S.C. § 1331 and ERISA § 502(e), 29 U.S.C. §1132(e).

3. Venue is proper in this district under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ERISA plan in question is administered in this district and violation of ERISA and breach of

fiduciary duty occurred within this district. Additionally, venue is proper under 28 U.S.C. § 1391(b) and (c).

4. Service of process is authorized in any other district where a defendant resides or may be found pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## Parties

5. Plaintiff, Robin (a.k.a. Robyn) Melville ("Robyn Melville"), is a Louisiana citizen residing in St. Tammany Parish. As the widow of Michael Steven Melville ("Mike Melville"), she brings this civil action both individually and on behalf of the Succession of Michael Steven Melville, having been appointed by Order dated June 29, 2012 as Independent Executrix of her late husband's succession in proceeding no. 2012-30455 in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana.

6. Defendant, Helmerich & Payne, Inc. ("H&P"), is a Delaware corporation authorized to do and doing business in Louisiana.

## The Plan

7. Helmerich & Payne, Inc. Insured Benefits Plan is an "employee welfare benefit plan" within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

8. H&P is the "plan sponsor" and "administrator" and a "fiduciary" with respect to the Helmerich & Payne, Inc. Insured Benefits Plan within the meaning of ERISA § 3(16) and (21), 29 U.S.C. § 1002(16) and (21).

9. One component of the Helmerich & Payne, Inc. Insured Benefits Plan is Plan Number 504 (the "Plan"), through which H&P made certain accidental death and dismemberment

("AD&D") insurance benefits available to eligible employees of Helmerich & Payne International Drilling Co., one of H&P's wholly-owned subsidiaries.

10. The "end of the plan year" within the meaning of ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1), for the Plan is December 31.

11. Before 2007, Hartford Life and Accident Insurance Company ("Hartford") is the organization through which AD&D benefits were provided under the Plan.

12. Effective January 1, 2007, Life Insurance Company of North America ("LINA") is the organization through which AD&D benefits have been provided under the Plan.

13. The change in the identity of the organization through which AD&D benefits are provided under the Plan from Hartford to LINA was a "material modification" or a "change in the information required under subsection (b)" within the meaning of ERISA § 102(a), 29 U.S.C. § 1022(a).

14. The change in providing AD&D benefits to eligible Plan participants through the policy issued by Hartford to providing such benefits through the policy issued by LINA was a "material modification" or a "change in the information required under subsection (b)" within the meaning of ERISA § 102(a), 29 U.S.C. § 1022(a).

15. The document attached hereto as **Exhibit 1** is a true and complete copy of the "summary plan description" within the meaning of ERISA § 102(a), 29 U.S.C. § 1022(a), that was in effect for the Plan in September 2009 (the "SPD").

16. The SPD contains a summary description of Group Accident Policy No. OK 961654 issued by LINA (the "LINA Policy"), which policy H&P maintains is the controlling plan document.

17.     Both the LINA Policy and the SPD include Form GA-01-1500.00 (the "Conversion Privilege"), which sets forth the terms and conditions for a retiring Plan participant to have LINA issue converted accident insurance on an individual policy or an individual certificate under a designated group policy for coverage up to a maximum amount of $250,000 ("Converted Coverage").

### Mike & Robyn Melville

18.     Mike Melville was employed by Helmerich & Payne International Drilling Co. from 1976 through early September 2009 when he retired, after working the last 12 years of his career in Louisiana.

19.     At all relevant times preceding Mike Melville's retirement, H&P was an "employer" and Mike Melville was an "employee" within the meaning of ERISA § 3(5) & (6), 29 U.S.C. § 1002(5) & (6), with respect to the Plan.

20.     At all relevant times preceding his retirement, Mike Melville was a "participant" in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), with respect to the LINA Policy.

21.     Mike Melville suffered a stroke, and in February 2009 his medical condition required that an artificial pacemaker be implanted in his chest.

22.     On or about March 4, 2009, Mike Melville began an approved leave of absence; and after a 180-day waiting period, he qualified for long-term disability and retired on or about September 2, 2009.

23.     Before his retirement, Mike Melville had maintained $357,000 in AD&D coverage under the LINA Policy with his wife, Robyn Melville, as the beneficiary.

4

24. H&P was aware of Mike Melville's intent to retire and that his AD&D coverage under the LINA Policy would terminate as a result of his no longer being eligible for coverage once he retired.

25. H&P had a reasonable opportunity in advance of Mike Melville's retirement to provide him with information on his rights under the Conversion Privilege in the LINA Policy.

26. Upon retirement, Mike Melville was eligible under the Conversion Privilege to have LINA issue Converted Coverage.

27. At no time was Mike Melville made aware of or provided with information on his rights under the Conversion Privilege in the LINA Policy.

28. At no time was Mike Melville provided with a summary of material modification ("SMM") concerning the change in the identity of the organization through which AD&D benefits are provided under the Plan from Hartford to LINA.

29. At no time was Mike Melville provided with an SMM concerning the change from H&P providing AD&D benefits to eligible Plan participants through the policy issued by Hartford to providing such benefits through the LINA Policy.

30. At no time was Mike Melville provided with the SPD (Exhibit 1).

31. At no time was Mike Melville provided with the LINA Policy (the plan document).

32. If Mike Melville had known of his rights under the Conversion Privilege, he could have and would have had LINA issue Converted Coverage in the maximum amount of $250,000 with his wife, Robyn Melville, as the beneficiary.

33. On October 4, 2011, Mike Melville tragically died as a result of an accident when the metal seat of the tractor he was driving broke, causing him to fall to the ground and be run over by the tractor.

34. If Converted Coverage had been in effect at the time of Mike Melville's death, Robyn Melville would have been entitled to the benefits under the Converted Coverage based on the circumstances of her husband's death.

35. Up until the time of Mike Melville's accident, Robyn Melville was an insured under group life insurance issued by LINA and made available through the Plan.

36. Once Mike Melville passed away, Robyn Melville was no longer eligible to continue under the group life insurance covering her; but under the terms of the Plan she was entitled to convert the group coverage to an individual policy of life insurance.

37. By letter dated October 18, 2011, H&P's Supervisor of Welfare Benefits sent Robyn Melville a packet of information concerning her right to convert her life insurance coverage from a group to an individual policy. Included in that packet were assorted materials that were intended to properly inform participants of how and when to exercise conversion, including an explanation of conversion of group life insurance to an individual policy; information on deadlines; instructions for calculating premiums; an annual premium rate table; an application for conversion; a notice of right to convert group life insurance; and additional materials further explaining conversion rights.

38. H&P sent Robyn Melville the October 18, 2011 letter with the packet of information on conversion rights in an attempt to comply with its fiduciary duties under ERISA.

39. When H&P learned of Mike Melville's intention to retire, it should have furnished him a packet of information on conversion rights similar to the packet H&P sent to Robyn Melville.

**ERISA Fiduciary Duties**

40. At all times in question, H&P as the administrator of the Plan was subject to ERISA § 101(a), 29 U.S.C. § 1021(a)(1).

41. At all times in question, H&P as the administrator of the Plan was subject to ERISA § 102, 29 U.S.C. § 1022.

42. At all times in question, H&P as the administrator of the Plan was subject to ERISA § 104(b), 29 U.S.C. § 1024(b).

43. At all times in question, H&P as the administrator of the Plan was subject to ERISA § 404(a), 29 U.S.C. § 1104(a)(1).

**Breach of ERISA Fiduciary Duties**

44. H&P owed Mike Melville statutory duties of exclusive loyalty and reasonable care, skill, prudence, and due diligence in providing benefits information, including the Conversion Privilege in the LINA Policy.

45. H&P owed Mike Melville a duty to communicate all material facts that it knew or should have known in connection with terms and conditions of insurance coverage under the LINA Policy, including the Conversion Privilege.

46. In failing to provide Mike Melville with statutorily required information and by not properly informing him of his employee benefits under the Plan, H&P violated federal law and breached its fiduciary duty. This failure deprived Mike Melville of crucial information on Plan benefits; namely his conversion rights. Mike Melville would have been made aware of how and when to obtain Converted Coverage had it not been for H&P's dereliction of duty.

47.     H&P's violation of ERISA §§ 101(a), 102, 104(b) and 404(a), 29 U.S.C. §§ 1021(a), 1022, 1024(b) and 1104(a), was the direct and proximate cause of actual harm, including the loss of statutorily protected rights and $250,000 of Converted Coverage benefits.

**WHEREFORE**, plaintiff, Robin Melville, prays for judgment in her favor and in favor of the Succession of Michael Steven Melville, and against defendant, Helmerich & Payne, Inc., as follows:

1. equitable relief in the amount of $250,000 (less applicable policy premiums) based upon a make-whole, surcharge or other equitable theory, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to place the parties in the positions they would have occupied had there been no breach of fiduciary duty;
2. reasonable attorney's fees and costs, pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);
3. pre-judgment and post-judgment interest; and
4. all other relief deemed appropriate by this Honorable Court.

/s/ Thomas Keiffer, Sr.
Thomas Keiffer, Sr. P.L.C.
Louisiana Bar No. 17641
219 Marigny Ave.
Mandeville, LA  70448
Phone: 985-624-2992
Fax: 985-624-5593
Email: thomas@keifferlaw.com
Attorney for Plaintiff,
Robin Melville

**Waiver of Service of Summons**

Service of process shall be accomplished by waiver pursuant to Fed. R. Civ. P. 4(d).